UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONIA MOHAMMADI,<br><br>                       Petitioner,<br><br>    v.<br><br>PAMELA BONDI, *et al.*,<br><br>                       Respondents. | Case No. C26-420-MLP<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

      Petitioner Ronia Mohammadi is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which she asserts that the revocation of her humanitarian parole in July 2025 violated her constitutional right to due process under the Fifth Amendment and the Administrative Procedure Act ("APA"), and that her now prolonged detention violates due process. (*See* dkt. # 1 at 8-10.) Petitioner's petition is supported by the declaration of her counsel Hilary Smith. (Dkt. # 1-2.) Respondents have filed a return and motion to dismiss (dkt. # 15), together with the supporting declaration of ICE Deportation Officer Joseph Carnevale (dkt. # 15-1), and Petitioner has filed a traverse in response to the return (dkt. # 17).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

The Court, having reviewed the parties' submissions and the governing law, finds that Respondents' detention of Petitioner, without prior notice or an opportunity to be heard, violated her constitutional right to due process. Accordingly, the Court GRANTS Petitioner's federal habeas petition and ORDERS her immediate release from custody under the same conditions previously imposed.

## I. BACKGROUND

Petitioner is a native and citizen of Afghanistan. (*See* Smith Decl., Ex. 2 at 1; Carnevale Decl., ¶ 3.) On September 1, 2021, Petitioner was paroled into the United States through Operation Allies Refuge ("OAR"), and she received authorization to remain in the United States for a temporary period not to exceed August 31, 2025. (Smith Decl., Ex. 1; Carnevale Decl., ¶ 4.) Petitioner thereafter filed an application for asylum with United States Citizenship and Immigration Services. (Dkt. # 1 at 4.)

On July 25, 2025, United States Customs and Border Protection arrested Petitioner because she did not possess documentation required by the Immigration and Nationality Act ("INA") to live in the United States legally. (*See* Smith Decl., Ex. 2; Carnevale Decl., ¶ 7.) On the same day, ICE's Office of Enforcement and Removal Operations served Petitioner with a Notice to Appear ("NTA") and filed the NTA with the Executive Office of Immigration Review ("EOIR"). (*See id.*) The NTA identified Petitioner as an arriving alien and charged her with being removable under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.*) The NTA indicated Petitioner's parole was "affirmatively cancelled under 8 C.F.R. § 212.5(e)" as of the date of her arrest. (Smith Decl., Ex. 2 at 1.) However, Petitioner did not receive any other notice of the cancellation of her parole nor was she given any reason as to why her parole was being

1  revoked. (Dkt. # 1 at 4.) Petitioner has been detained at NWIPC since her arrest on July 25,
2  2025.

3  During the course of her detention at NWIPC, Petitioner has twice requested bond
4  hearings, but on both occasions the immigration judge ("IJ") advised there was no jurisdiction to
5  consider bond because Petitioner was detained as an "arriving alien" subject to mandatory
6  detention under 8 U.S.C. § 1225(b), and Petitioner's counsel withdrew the requests. (*See*
7  Carnevale Decl., ¶¶ 8-9, 13-14, Ex. 3.)

8  At some point after Petitioner was detained, she re-filed her application for asylum with
9  the Tacoma Immigration Court. (*See* dkt. # 1 at 4.) On September 16, 2025, Petitioner appeared
10 for a hearing before an IJ who sustained the charge of removability and identified Afghanistan as
11 the country of removal. (Carnevale Decl., ¶ 10.) On the same day, the immigration court issued a
12 notice setting an individual hearing for October 10, 2025. (*Id.*) The Department of Homeland
13 Security ("DHS") subsequently moved to continue that hearing, and the hearing was re-
14 scheduled for November 5, 2025. (*Id.*, ¶¶ 11-12.) In late October 2025, DHS filed evidence that
15 purported to show Petitioner "is an Islamic State of Iraq and Ash Sham (ISIS) member that is
16 carrying out intelligence activities in Washington State." (*Id.*, ¶ 15, Ex. 6.) On November 4,
17 2025, Petitioner's counsel filed a motion to withdraw and a motion to continue. (*Id.*, ¶ 16.) Those
18 motions were granted, and Petitioner's individual hearing was re-scheduled for December 2,
19 2025. (*Id.*, ¶ 17.)

20 On December 1, 2025, Petitioner's new counsel filed a motion to suppress the evidence
21 filed by DHS in late October 2025, and Petitioner's individual calendar hearing was held on
22 December 2, 2025. (Carnevale Decl., ¶¶ 18-19.) At that hearing, the IJ denied Petitioner's
23 motion to suppress and set the matter over to issue a written decision. (*Id.*, ¶ 19.) On December

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

1   23, 2025, the IJ issued a written decision granting Petitioner asylum. (*Id.*, ¶ 20, Ex. 4.) On

2   January 22, 2026, DHS filed an appeal of the IJ's decision with the Board of Immigration

3   Appeals ("BIA"), and that appeal remains pending. (*See id.*, ¶ 21; dkt. # 17, Ex. A.)

4         Petitioner filed the instant petition on February 5, 2026. Petitioner alleges therein that (1)

5   her Fifth Amendment right to due process was violated when Respondents re-detained her

6   without providing notice of the reasons for the revocation of her parole, (2) Respondents violated

7   the APA when they "categorically revoked [her] parole and detained her without consideration of

8   her individualized facts," and (3) her ongoing detention violates her due process rights because it

9   has become prolonged. (Dkt. # 1 at 8-10.) Petitioner seeks an order granting her release or, in the

10  alternative, directing Respondents to provide her a bond hearing within seven days. (*Id.* at 11.)

11  Petitioner also seeks an award of attorney's fees and costs. (*Id.*)

12        Respondents argue that Petitioner's first two claims for relief must be dismissed because

13  (1) they are not appropriately raised in a federal habeas petition because they do not seek to

14  challenge her current detention, (2) they are now moot given that Petitioner's parole has expired,

15  (3) the Court lacks jurisdiction to review the revocation of Petitioner's discretionary parole, (4)

16  Petitioner fails to state a claim under the APA that her parole revocation was unlawful, (5) they

17  fail on the merits as Petitioner pleads facts demonstrating she is ineligible for further parole, and

18  (6) there is no due process interest in discretionary benefits such as temporary parole.[1]

---

[1] Petitioner argues that the Court should strike Respondents' return and motion to dismiss because it does not comply with requirements of the Local Civil Rules ("LCR"). (Dkt. # 17 at 1-2.) In particular, Petitioner notes that Respondents do not include a certification in the signature block as to the number of words included in the return and motion as required by LCR 7(e)(6) and Petitioner's calculation of the total word count suggests Respondents' submission fails to comply with LCR 7(e)(4) because it exceeds the allowable word count for a motion to dismiss by approximately 1500 words. (*Id.* at 2.) Petitioner notes as well that Respondents could have, but did not, file a motion to file an over-length brief in accordance with LCR 7(f)(1), nor did they confer with Petitioner's counsel prior to filing the motion to dismiss. (*Id.*). While the Court does not condone the violation of its local rules it declines to strike the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

## II. LEGAL STANDARDS

### A. Habeas Corpus

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### B. Parole

It is undisputed that Petitioner was released on humanitarian parole at the time of her entry into the United States on September 1, 2021. Humanitarian parole is authorized under 8 U.S.C. § 1182(d)(5)(A). Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).[2]

---

excessive text on this occasion but cautions Respondents' counsel to be attentive to the local rules applicable in the jurisdictions in which they appear.

[2] The Court observes that Afghan nationals paroled into the United States under "Operation Allies Welcome" were subject to a "rigorous screening and vetting process" prior to their arrival in the United

1  In other words, if a noncitizen has been granted parole, it means that a DHS official with
2  authority decided there were either "urgent humanitarian reasons" or "significant public benefit"
3  justifying the parole of that individual, and that the individual did not pose a security or flight
4  risk.
5      Parole terminates automatically upon a noncitizen's departure from the United States or,
6  if the noncitizen has not departed, "at the expiration of the time for which parole was
7  authorized." 8 C.F.R. § 212.5(e)(1). No written notice is required for automatic termination.
8  Parole may also be terminated, on notice, "upon accomplishment of the purpose for which parole
9  was authorized," or when a DHS official with authority decides that "neither humanitarian
10  reasons nor public benefit warrants the continued presence of the [noncitizen] in the United
11  States." 8 C.F.R. § 212.5(e)(2)(i). Written notice must be provided to the noncitizen when
12  termination is based on the reasons set forth in § 212.5(e)(2)(i).

### III.   DISCUSSION

#### A.   Jurisdiction

15      Respondents argue that the Court lacks jurisdiction to consider the legality of the
16  revocation of Petitioner's parole under the APA because parole decisions are precluded from
17  judicial review by statute and are also committed to agency discretion by statute. (Dkt. # 15 at
18  17-20.) Petitioner argues in response that she is not asking the Court to review the legality of her
19  parole but is, instead, challenging her current detention on the basis that she was not afforded due
20  process when she was detained in July 2025. (Dkt. # 17 at 2-3.) Petitioner further argues that she
21  is utilizing her APA claim to challenge the lawfulness of her detention and not as a means of

---

23  States "to ensure that those seeking entry do not pose a national security or public safety risk." *See Operation Allies Welcome*, Department of Homeland Security, https://www.dhs.gov/archive/operation-allies-welcome (accessed March. 4, 2026).

seeking judicial review, which she suggests is permissible under § 2241. (*See id.* at 3 (citing *Noor v. Larose*, 2025 WL 2800149, at *6 (S.D. Cal. Oct. 1, 2025) (The "underlying [APA] arguments do not subsume the core of the habeas petition, simply upon mention of the APA.")).) Finally, Petitioner argues that even if her APA claim is barred in this action, the constitutional due process issues alleged in her first and third grounds for relief are not. (*Id.*)

While it is true that courts may not review discretionary decisions made by immigration authorities, courts may review immigration-related detentions to determine if they comport with the demands of the Constitution. *Zadvydas*, 533 U.S. at 688. The Court construes Petitioner's first and third grounds for relief as asserting viable due process claims arising out of her detention. These claims clearly fall within the purview of this Court in an action brought under § 2241. And, as explained below, this Court concludes Petitioner is entitled to relief with respect to the due process claim asserted in her first ground for relief and, thus, the Court need not address Petitioner's APA claim or the accompanying procedural morass.

**B.     Mootness**

Respondents also argue that Petitioner's challenges to the revocation of her parole are moot because her parole expired by its own terms on August 31, 2025, and thus, any challenge to the revocation of her now-expired parole does not present a live controversy. (Dkt. # 15 at 16.) The Court disagrees.

Under Article III of the U.S. Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). In order to maintain a claim, "a litigant must continue to have a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'" *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quoting *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001)).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

Petitioner asserts that her claim is not moot, noting that she is still detained and arguing that the relevant facts are those that existed at the time of her detention. (Dkt. # 17 at 3.) Petitioner points out that at the time she was detained, her previously granted humanitarian parole had not yet expired, and she argues that individuals paroled into the United States under the humanitarian parole statute, 8 U.S.C. § 1182(d)(5)(A), acquire a liberty interest in their freedom from detention and are entitled to certain due process protections. (*See id.* at 4.) For reasons that will be discussed in greater detail below, the Court concludes that Petitioner has presented a viable due process claim arising out of the revocation of her expired parole and that the claim therefore is not moot.[3]

### C. Due Process

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690. It is well established that due process rights extend "to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

---

[3] The Court need not address the mootness argument as to Petitioner's APA claim given that it has decided it need not reach that claim.

While due process is flexible and adequate procedural protections can vary based on the circumstances, *Mathews* at 334, courts look to the three-part test established in *Mathews v. Eldridge* to determine what procedures suffice. The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. "In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in 'the immigration detention context[.]'" *E.A. T.–B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts). Petitioner suggests the same framework should be applied here. (*See* dkt. # 17 at 6-7.)

### 1.     Private Interest

Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Respondents argue that Petitioner's due process challenge to the revocation of her parole fails because discretionary parole under § 1182(d)(5)(A) does not create a constitutionally

1  protected interest. (Dkt. # 15 at 25.). Respondents also argue that Petitioner is properly deemed
2  an inadmissible arriving alien and therefore "has no inherent rights under the U.S. Constitution
3  and is protected only by the rights conferred by statute." (*Id*. at 26 (citing *Shaughnessy v. United*
4  *States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Dep't of Homeland Sec. v. Thuraissigiam*, 591
5  U.S. 103, 107 (2020)).) However, courts in this district have consistently rejected these
6  arguments and concluded that an individual such as Petitioner who has been released on parole
7  under § 1182(d)(5)(A), and has lived with relative freedom in the United States for a number of
8  years, has a protected interest in not being detained. *See Dieng v. Hermosillo*, 2026 WL 411857,
9  at *3-5 (W.D. Wash. Feb. 13, 2026); *Zavorin v. Wamsley*, 2026 WL 309733, at *3-4 (W.D.
10 Wash. Feb. 5, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at * 3-5 (W.D. Wash. Jan. 20,
11 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025).
12 District courts in the Ninth Circuit have also recognized that a "petitioner's liberty interest [does]
13 not expire along with his parole." *Quiroga-Chaparro v. Warden of the Golden State Annex. Det.*
14 *Facility*, 2025 WL 3771473, at *5 (E.D. Cal. Dec. 31, 2025); *see also G. G. v. Kaiser*, 2025 WL
15 3254999, at *6 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara*, 800 F. Supp. 3d at 1136-37.
16     Respondents make no effort to distinguish the recent cases that have recognized liberty
17 interests in humanitarian parole and, because Respondents reject the notion that Petitioner has a
18 protected interest at stake, they do not engage in any discussion of the *Mathews* factors.
19 Consistent with prior decisions of judges in this district and elsewhere, this Court concludes that
20 Petitioner had a strong private interest in her continued liberty and, thus, the first *Mathews* factor
21 weighs in her favor.
22 //
23 //

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

### 2. *Risk of Erroneous Deprivation*

Second, the circumstances of Petitioner's detention underscore the high risk of erroneous deprivation of her liberty absent a pre-detention hearing. There is no evidence in the record that Petitioner's parole was revoked because an authorized individual[4] determined that the purposes of the parole had been served or that neither humanitarian reasons nor public benefit warranted her continued presence. *See* 8 C.F.R. § 212.5(e)(2)(i). While Respondents have produced the NTA in which Petitioner was advised her parole had been cancelled, it provides no details as to who authorized the cancellation or the reasons for the cancellation. The risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole.

There is also a suggestion in the record that the revocation of Petitioner's parole arises out of DHS's suspicion that Petitioner is an ISIS operative "engaging in espionage" in the State of Washington. (*See* dkt. # 15 at 8.) Notably, however, the IJ who presided over Petitioner's hearing on her application for asylum concluded the government's evidence of Petitioner's potential involvement in terrorist activity was entitled to "no more than minimal weight" and was not sufficient to preclude a grant of asylum. (*See* Carnevale Decl., Ex. 4.) The Court observes as well that nothing in the record suggests Respondents were even aware of such evidence at the time Petitioner's parole was revoked. The IJ's decision on Petitioner's application for asylum indicates that the evidence presented to the immigration court for purposes of the hearing was prepared on October 16, 2025, well after Petitioner's parole was revoked. (*See id.*, Ex. 4 at 4.)

---

[4] Pursuant to 8 C.F.R. § 212.5(a), the authority of the DHS Secretary can be exercised by "the Assistant Commissioner, Office of Field Operations; Director, Detention and Removal; directors of field operations; port directors; special agents in charge; deputy special agents in charge; associate special agents in charge; assistant special agents in charge; resident agents in charge; field office directors; deputy field office directors; chief patrol agents; district directors for services; and those other officials as may be designated in writing[.]"

Given the lack of clarity in the record regarding the basis for the revocation of Petitioner's parole or the procedures employed in effectuating the revocation, Petitioner's detention prior to a hearing in which relevant factual questions could have been resolved maximized the risk that her liberty interest would be erroneously deprived. The second *Mathews* factor favors Petitioner.

        3.    *Government's Interest*

Finally, the government's countervailing interest in detaining Petitioner prior to a hearing is minimal. Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas,* 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). While providing a hearing before re-detaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant liberty interest. *See*, *e.g.*, *Ortega*, 415 F. Supp. 3d at 970 ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Though requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process is constitutionally deficient.

In sum, all three *Mathews* factors weigh in Petitioner's favor and, thus, this Court finds Petitioner should be immediately released from custody.

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition (dkt. # 1) and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours**. Respondents shall file a certification within **forty-eight (48) hours** that Petitioner has been released. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 4th day of March, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge